# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## STATE OF TENNESSEE v. MARLON D. BEAUREGARD

Direct Appeal from the Circuit Court for Hardeman County
No. 270467    Kerry Blackwood, Judge

———————————

No. W1999-01496-CCA-R3-CD - Decided May 26, 2000

———————————

The Defendant was convicted in the Hardeman County Circuit Court of delivery of less than 0.5 grams of cocaine, and he appealed. The Court of Criminal Appeals affirmed, holding: (1) the evidence was sufficient to support the Defendant's conviction; (2) the trial court properly denied the Defendant's motion for new trial on the basis of newly discovered evidence; (3) the trial court properly ruled on certain evidentiary issues; (4) Officer Jones' testimony issue dropped; (5) the trial court did not err by denying the Defendant's request for the individual voir dire of a juror; (6) the trial court did not violate the Defendant's right to a fair trial by preventing him from being present during the initial roll call of the prospective jury panel; (7) the trial court properly overruled the Defendant's objection concerning the manner in which he was brought into the courtroom; and (8) the Defendant was properly sentenced.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed.

WELLES, J., delivered the opinion of the court, in which LAFFERTY, SR.J., joined. TIPTON, J., filed a concurring opinion.

Jeannie Kaess, Bolivar, Tennessee, for the appellant, Marlon D. Beauregard.

Paul G. Summers, Attorney General and Reporter, R. Stephen Jobe, Assistant Attorney General, Elizabeth Rice, District Attorney General, and Jerry Norwood, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In January 1998, the Hardeman County Grand Jury indicted the Defendant, Marlon D. Beauregard, for the delivery of less than 0.5 grams of cocaine. The Defendant and his co-defendant, Roderick Polk, were tried together before a Hardeman County jury, and the jury found

both defendants guilty. After a sentencing hearing, the trial judge sentenced the Defendant as a Range I standard offender to six years imprisonment. Pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure, the Defendant now appeals.

The Defendant presents the following issues for our review: (1) whether sufficient evidence was presented to support his conviction; (2) whether the trial court erred by denying his motion for new trial based on newly discovered evidence; (3) whether the trial court erred by allowing improper hearsay statements from co-defendant Polk; (4) whether the trial court erred by denying his motion for mistrial concerning testimony by Officer Kenneth Jones that the Defendant "was already incarcerated"; (5) whether the trial court erred by denying his request for the individual voir dire of one of the jurors; (6) whether the trial court erred by preventing him from being present in the courtroom at the beginning of voir dire; (7) whether the trial court erred by overruling the Defendant's objection regarding the manner in which he was brought into the courtroom during trial; and (8) whether the Defendant was improperly sentenced.

The charges in this case stem from a controlled drug purchase made as part of an undercover sting operation in Bolivar, Tennessee. On August 5, 1997, the day in question, Officer Kenneth Jones posed as a "crack head" to purchase drugs. As part of his disguise, he was furnished with an undercover police vehicle, which was equipped with both a video camera and an audio recording system. Jones testified at trial that while he was "riding around in Bolivar," he encountered co-defendant Polk at an intersection. He asked Polk if he knew where he might purchase "[c]rack [c]ocaine," and Polk responded that he could "take [Jones] to where he could buy it." Polk entered the vehicle which Jones was driving and sat in the passenger seat of the car.

Jones stated that he and Polk "rode down a few blocks and discussed where [they] were going to purchase" the cocaine. They made two or three stops and attempted unsuccessfully to buy cocaine. They then drove to Martin Luther King Drive, where they encountered a man removing a laundry basket from a car. Jones identified this man as the Defendant. According to Jones, Polk asked the Defendant if he could "do 50, which is 50 dollars worth of [c]rack," and the Defendant "told [Polk] to get out of the vehicle and for [Jones] to 'make the block.'" Jones gave Polk fifty dollars and drove away. When he returned, Polk reentered the car and handed Jones three "rocks" of crack cocaine. Then, at Polk's request, Jones gave Polk a portion of one of the rocks. Following the transaction, Jones placed the narcotics in the glove compartment box of the car for safekeeping.

Michael Jones, a Narcotics Investigator with the Bolivar Police Department, testified that he worked with Kenneth Jones in the undercover sting operation. He stated that he met with Kenneth Jones prior to the transaction on August 5, 1997, gave him money for the "buy," and then "stay[ed] close" to him during the transaction for safety reasons. Michael Jones testified that he later collected the narcotics from the glove compartment box. He stated that he placed the narcotics in an envelope and delivered the envelope to the Tennessee Bureau of Investigation Crime Laboratory for analysis.

Kay Sherriff, a forensic scientist at the TBI Crime Lab, testified that she received and tested the substance which was delivered by Officer Michael Jones. She identified the substance as "[c]ocaine [b]ase," a Schedule II drug, and stated that it weighed 0.3 grams. She reported that there were three rocks of cocaine in the envelope.

Kenneth Jones also introduced a video and audio tape of the transaction at trial. On the tape, Jones described the Defendant as follows: "light skinned guy with blue Magic shirt, hair cut real short, approximately 5'11", 165, 170 pounds." Kenneth Jones later identified photographs of both defendants from a photo line-up. To counter Kenneth Jones' initial description of the Defendant, the defense introduced the testimony of Loraine Graham, an L.P.N. who had treated the Defendant for headaches on December 10, 1997, some five months before the trial. She stated that she weighed and measured the Defendant as part of her routine patient assessment. Graham stated that at the time she treated the Defendant, he weighed 142 pounds. She also reported that he was five feet, six and a half inches tall without shoes and five feet, seven and a half inches with shoes.

On cross-examination, Kenneth Jones was questioned about his identification of the Defendant. He admitted that in his written report, he described the Defendant as being approximately five feet, ten inches tall. However, he insisted that he got a "very good look" at the Defendant and that there was "absolutely no doubt in [his] mind" that he had identified both defendants correctly. Kenneth Jones further admitted that he drank beer while working undercover. He reported that on the date of the transaction in question, he consumed less than one half of a thirty-two ounce bottle of beer, but he maintained that he was not impaired by the alcohol he consumed. Michael Jones verified Kenneth Jones' claim that he was not intoxicated on August 5, 1997.

## I. SUFFICIENCY OF THE EVIDENCE

The Defendant first argues that the evidence presented at trial is insufficient to support his conviction. He contends that the evidence did not sufficiently establish his identity as the person who sold the cocaine to Officer Jones. Alternatively, he argues that the State failed to prove that he actually delivered the cocaine to Roderick Polk.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914.

The Defendant first contends that he was incorrectly identified as the person who sold cocaine to Officer Jones. In support of this contention, he points to discrepancies between Kenneth Jones' description of him and measurements taken by nurse Loraine Graham. He also complains that Kenneth Jones did not identify any specific facial characteristics.

"The question of appellant's identity as the person who committed the offense [is] for the jury's determination, upon consideration of all the competent proof." State v. Shelley, 628 S.W.2d 436, 438 (Tenn. Crim. App. 1981). Here, the jury was presented with testimony by Officer Kenneth Jones that he "got a very good look" at the man who told him to "make the block." Jones also testified that he was absolutely sure that the Defendant was the man he had seen. Having heard all of the evidence, the jury concluded that the Defendant was the man whom Jones saw. We will not disturb this finding of fact on appeal.

The Defendant next argues that insufficient evidence was presented to support the jury's finding that he actually delivered the cocaine to Kenneth Jones. He states, "The only contact the man had with Roderick Polk was to tell Kenneth Jones to drive around the block. . . . Kenneth Jones [did] not see who delivered the cocaine to Roderick Polk. When Kenneth Jones picked up Roderick Polk, there were other men in the area."

To establish the offense in this case, the State was required to prove that the Defendant knowingly delivered a controlled substance. See Tenn. Code Ann. § 39-17-417(a)(2). "'Delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship . . . ." Id. § 39-17-402(6). Here, Kenneth Jones testified that he and Polk approached the Defendant, and Polk asked the Defendant whether he could "do 50." The Defendant instructed Jones to "make the block" while Polk accompanied the Defendant. Jones gave Polk fifty dollars. When Jones returned, Polk reentered Jones' vehicle with possession of three rocks of cocaine. Polk gave the cocaine to Jones. Viewing this evidence in light most favorable to the State, see Tuggle, 639 S.W.2d at 914, we conclude that sufficient evidence was presented from which the jury could have determined beyond a reasonable doubt that the Defendant delivered the cocaine to Kenneth Jones.

## II. NEWLY DISCOVERED EVIDENCE

The Defendant next argues that the trial court erred by denying his motion for new trial based on newly discovered evidence. Following trial, the Defendant submitted affidavits from different individuals who stated that they had overheard Roderick Polk saying he did not obtain the cocaine from the Defendant. The Defendant contends that this evidence was material and would likely have changed the result of the trial.

An accused seeking a new trial on the basis of newly discovered evidence must file an affidavit

> setting forth the facts showing that he and his counsel exercised reasonable diligence and were not negligent in the search for evidence in preparation for the trial of the case, that he and his counsel had no pre-trial knowledge of the allegedly newly discovered evidence, and it must be supported by the affidavit of the new witness showing materiality of the testimony and that it had not been communicated to the accused prior to trial.

Jones v. State, 452 S.W.2d 365, 367 (Tenn. Crim. App. 1970). "In seeking a new trial based on newly discovered evidence, the defendant must establish (1) reasonable diligence in attempting to discover the evidence; (2) the materiality of the evidence; and (3) that the evidence would likely change the result of the trial." State v. Meade, 942 S.W.2d 561, 565-66 (Tenn. Crim. App. 1996).

"The decision to grant or deny a new trial on the basis of newly discovered evidence is a matter which rests within the sound discretion of the trial court." State v. Goswick, 656 S.W.2d 355, 358 (Tenn. 1983). Thus, our standard of review is abuse of discretion. See Meade, 942 S.W.2d at 565. Moreover, the trial court may determine the credibility of any newly discovered evidence, and if the court concludes that the evidence would not be worthy of belief by the jury, the court should deny the motion for new trial. See Evans v. State, 557 S.W.2d 927, 938 (Tenn. Crim. App. 1977).

In this case, the Defendant has submitted affidavits from three sources: (1) co-defendant Roderick Polk, who himself was convicted in this case; (2) two inmates who claimed to have overheard Polk say that he did not obtain the cocaine in this case from the Defendant; and (3) a deputy sheriff who transported Polk and the Defendant to jail and claimed to have overheard them discussing the fact that Polk obtained the cocaine in this case from another source. Having reviewed this new evidence, we are unconvinced that the evidence would have changed the result in this trial. Each of the affidavits, with the exception of that of the deputy sheriff, was submitted by individuals who were incarcerated. Furthermore, as the State argues, the conversation between the two defendants in the presence of the deputy sheriff "reeks of a setup." Considering the questionable credibility of this evidence, we conclude that the trial court did not abuse its discretion by denying the Defendant's motion for new trial.

## III. HEARSAY

Third, the Defendant argues that the trial court erred by allowing improper hearsay testimony by Kenneth Jones. Specifically, the Defendant complains of the following colloquy, which occurred on direct examination of Kenneth Jones by the State:

Q    Alright, so with regard to the first time that you saw either of [the defendants], what were you doing on that day?
A    On that day, I was riding around here in Bolivar. I came in contact with Mr. Polk on Third and Sycamore Street. And, I asked him if he knew where I could purchase 50 dollars worth of Crack Cocaine. And, he advised me he could take me to where I could buy it.

Following this testimony, counsel for the Defendant objected, stating that the testimony was hearsay as to her client, and the trial court overruled the objection.

Kenneth Jones apparently made the statement in question to suggest that because Polk eventually led Officer Jones to the Defendant, the Defendant was the individual who sold Jones the cocaine. For this reason, we agree that the statement was hearsay as to the Defendant. However, we also conclude that the statement was of questionable relevance with regard to the Defendant, see Tenn. R. Evid. 401, 402, and that its admission into evidence was harmless. We note that Polk directed Jones to other "sources" prior to approaching the Defendant.

Jones later testified that he and Polk approached the Defendant, and Polk asked the Defendant if he could "do 50." According to Jones, the Defendant told Jones to "make the block," and when Jones returned, Polk provided him with the cocaine. In light of this evidence and other evidence presented at trial indicating the Defendant's guilt, we are satisfied that any error made in allowing Jones' initial testimony was harmless. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).

## IV. MOTION FOR MISTRIAL

Fourth, the Defendant argues that the trial court erred by denying his motion for mistrial. The defense moved for a mistrial following this testimony by Kenneth Jones:

Q    When you testified that you had been involved in his arrest, tell me how you were involved.
A    I was involved in Mr. Polk's arrest.
Q    Okay, so you weren't involved in Mr. Beauregard's arrest?
A    Mr. Beauregard was already incarcerated.

The trial court responded to the Defendant's motion for mistrial by stating, "The jury will disregard the last statement by the witness."

-6-

"The granting or denial of a mistrial is within the sound discretion of the trial court." State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). This Court will not disturb such a decision unless a showing of an abuse of discretion is made. See id. Furthermore, a jury is presumed to have followed the curative instructions of the court. See State v. Smith, 993 S.W.2d 6, 30 (Tenn. 1999).

Here, the witness did not testify that the Defendant had been previously incarcerated for a separate offense. Instead, he stated that he was not involved in the Defendant's arrest because the Defendant "was already incarcerated." It is unclear whether the witness was referring to the Defendant's arrest for the charge of which he is presently convicted or to his arrest for another charge. We conclude that such a vague statement was unlikely to have produced prejudice against the Defendant. Furthermore, the trial court immediately provided a curative instruction to the jury to disregard the witness' statement. In light of the curative instruction and the vagueness of the statement, we are satisfied that the admission of the statement was harmless, see Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a), and that the trial court did not abuse its discretion by denying the Defendant's motion for mistrial.

## V. INDIVIDUAL VOIR DIRE OF JUROR

Fifth, the Defendant argues that the trial court erred when it denied the Defendant's request for the individual voir dire of juror Norma Russell. According to affidavits submitted by the Defendant, juror Russell observed the Defendant in handcuffs while the jurors were arriving at the courthouse for jury duty. The Defendant maintained that Russell "stared" at him and the handcuffs as she passed him. Following this encounter, the Defendant requested the individual voir dire of Russell to determine whether she had been influenced by seeing the handcuffs. The trial court denied the Defendant's request.

Rule 24(a) of the Tennessee Rules of Criminal Procedure provides in pertinent part that "[t]he court, upon motion of a party or on its own motion, may direct that any portion of the questioning of a prospective juror be conducted out of the presence of the tentatively selected jurors and other prospective jurors." Tenn. R. Crim. P. 24(a) (emphasis added). Thus, the trial court's authority to conduct individual voir dire is permissive rather than mandatory. See Smith, 993 S.W.2d at 29. The question of whether prospective jurors should be questioned individually addresses itself to the sound discretion of the trial court, and absent clear abuse, an appellate court will not interfere with the trial court's exercise of its discretion. See State v. Burton, 751 S.W.2d 440, 452 (Tenn. Crim. App. 1988). However, this Court has held that "when it is believed there is a significant possibility that prospective jurors have been exposed to potentially prejudicial material, individual voir dire is mandated with respect to each prospective juror's exposure to the prejudicial material." Id. (citing Sommerville v. State, 521 S.W.2d 792, 797 (Tenn.1975); State v. Claybrook, 736 S.W.2d 95, 98-101 (Tenn.1987)).

In this case, we are unable to find prejudice resulting from any encounter between the Defendant and Russell. Because the record in this case does not contain a complete transcript

of voir dire, there is no proof in the record regarding questions asked of Russell during group voir dire, if any, or proof concerning peremptory challenges. "Only when a defendant exhausts all his peremptory challenges and is forced to later accept an incompetent juror (propter defectum) can he complain about the jury composition. Absent proof on the use of peremptory challenges it is necessary for the defendant to show actual prejudice or bias (propter affectum) in order to prevail on his jury complaints." State v. Kilburn, 782 S.W.2d 199, 202 (Tenn. Crim. App. 1989) (citations omitted). More importantly, however, we have no record that Norma Russell actually served on the jury, or that any member of the jury was aware of any such incident. Absent a showing of prejudice, we must conclude that the trial court did not abuse its discretion by denying the Defendant the opportunity to conduct the individual voir dire of juror Russell.

## VI. IMPANELING OF THE JURY

In his sixth assignment of error, the Defendant argues that the trial court erred by denying him his right to be present for the impaneling of the jury. According to the Defendant, he was being held in a holding cell outside the courtroom prior to trial, and the sheriff's deputies refused to allow him to enter the courtroom when the judge began to call the jury roll. He was later allowed to join his attorney at counsel table.

An accused has a fundamental right to be present at his own trial. See State v. Muse, 967 S.W.2d 764, 766 (Tenn. 1998) (citing United States v. Alikpo, 944 F.2d 206, 208 (5th Cir.1991); United States v. Hernandez, 873 F.2d 516, 518 (2nd Cir.1989)). This right is guaranteed not only by our federal and state constitutions, but also by Rule 43 of the Tennessee Rules of Criminal Procedure. See id.; see also Tenn. R. Crim. P. 43(a). "Presence at 'trial' means that the defendant must be 'present in court from the beginning of the impaneling of the jury until the reception of the verdict and the discharge of the jury.'" Muse, 967 S.W.2d at 766 (quoting Logan v. State, 173 S.W. 443, 444 (Tenn. 1915)).

Our supreme court has held that a defendant's total absence from the entire voir dire process is not subject to harmless error analysis and constitutes reversible error. See id. at 768. However, our supreme court has also indicated that the absence of a Defendant during a "small portion of the jury selection process" may be deemed harmless. Id. The court has noted that "the presence of the defendant during jury selection [has] a reasonably substantial relation to his opportunity to defend against the charge." Id. at 767.

Although the record of voir dire is incomplete in this case, following objection to the transcript by counsel for the defense, the trial judge supplemented the record from his memory, stating,

> This case was set for trial on the day in question; the Clerk was in the process of calling the roll, the prospective jurors' names.

At that point in time, two sheriff's deputies did bring Mr. Beauregard, who was in jail, and . . . lead him to the seat, where defendants sit at counsel table, prior to trial.

Ms. Kaess [counsel for the Defendant] objected to the manner in which the defendant was brought into the Courtroom; and the Court overruled the objection, because that's the way nearly all clients are brought into the Courtroom, here in Hardeman County, that have been in jail.

And that's the record.

In addition, the record indicates that before voir dire began, the court asked all parties if they were ready to proceed, and counsel for the Defendant indicated affirmatively. Thus, there is no indication that the Defendant was absent from any portion of the voir dire process except part of the initial roll call of prospective jurors. We find no prejudice to the Defendant from his absence during this portion of the jury selection process. We therefore conclude that any error resulting from the Defendant's brief absence from the courtroom at the beginning of jury impaneling was harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

## VII. MANNER IN WHICH DEFENDANT WAS BROUGHT INTO THE COURTROOM

In his seventh issue on appeal, the Defendant contends that the trial court erroneously overruled his objection concerning the manner in which he was brought into the courtroom. He states that he was not permitted to use the door available to the general public, but instead was forced to enter the courtroom from a holding cell adjacent to the courtroom and was escorted to the defense table by two sheriff's deputies. He argues that "this conduct deprived him of a fair trial because it showed the jurors that he was incarcerated . . . [and] encouraged them to speculate on what crime he may have committed in the past and why he was treated differently than his codefendant."

In support of his argument, the Defendant cites cases in which the reviewing court found error because the defendant was forced to wear prison clothes or shackles during trial. See, e.g., Estelle v. Williams, 425 U.S. 501 (1976); Willocks v. State, 546 S.W.2d 819, 820 (Tenn. Crim. App. 1976). We agree that "a defendant should not be required to wear prison clothing or be in handcuffs during trial in a courtroom, except insofar as the trial court, in its sound discretion may find it necessary to prevent escapes, violence or misconduct which would impede the trial." State v. Baker, 751 S.W.2d 154, 164 (Tenn. Crim. App. 1987). However, here, the Defendant entered the courtroom escorted by two guards who did not restrain him in any way. The Defendant does not claim that he was shackled during trial or forced to wear prison attire. As the United States Supreme Court has observed,

[w]hile shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. . . . Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards.

Holbrook v. Flynn, 475 U.S. 560, 569 (1986).

It is unclear from the limited record concerning the Defendant's entrance into the courtroom what effect, if any, this event may have had on the jury. There is nothing in the record, however, to indicate that the Defendant was prejudiced by the manner in which he was brought into the courtroom.

> Generally, the trial court, which has presided over the proceedings, is in the best position to make determinations regarding how to achieve [the] primary purpose [of ensuring a fair trial], and absent some abuse of the trial court's discretion in marshalling the trial, an appellate court should not redetermine in retrospect and on a cold record how the case should have been better tried.

State v. Franklin, 714 S.W.2d 252, 258 (Tenn. 1986). Here, the trial court overruled the Defendant's objection to the manner in which he entered the courtroom, and finding no prejudice in the record before us, we are unable to discern any reason to set aside that ruling.

## VIII. SENTENCING

Finally, the Defendant argues that he was improperly sentenced. He was sentenced to serve the maximum sentence for a Range I standard offender of six years for the delivery of less than 0.5 grams of cocaine, a Class C felony. See Tenn. Code Ann. § 39-17-417(a), (c)(2). The Defendant contends that he should have been sentenced in the mid-range for the offense.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we

would have preferred a different result.  See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In sentencing the Defendant, the trial court applied one enhancement factor, that "the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," Tenn. Code Ann. § 40-35-114(1), and no mitigating factors.  Our review of the record clearly confirms that the Defendant does indeed have a lengthy criminal record, which includes several prior drug convictions.  He has approximately seventeen prior convictions, not counting traffic offenses.  The Defendant's record is particularly lengthy considering that he was only twenty-three years old at the time of sentencing.  The presentence report also reflects that the Defendant dropped out of high school and that he had been unemployed for approximately two years before the commission of this offense.  Having reviewed the record in this case, we conclude that the Defendant's background and extensive criminal history demonstrate a lack of potential for rehabilitation and sufficiently support the imposition of the maximum sentence in this case.

The judgment of the trial court is accordingly affirmed in all respects.